UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-20547-CR-Lenard/Garber

UNITED STATES OF AMERICA,

v.

CINTIA PIREZ,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court by Order of Reference from United States District Judge Joan A. Lenard. Pursuant to such reference, the Court has received the defendant Pirez's Motion to Suppress Statements [DE 31] and the government's response in opposition. A hearing on said Motion was held on September 17, 2008. The defendant appeared with her attorney of record, Sabrina D. Puglisi, Assistant Federal Public Defender, and the government was represented by Assistant United States Attorney Cristina Perez Soto.

## FACTUAL BACKGROUND

On June 1, 2008, the defendant departed by plane from Miami International Airport bound for Nassau, Bahamas. Upon arrival, she was subjected to an inspection by Bahamian officials who noticed that although she possessed what appeared to be a valid Argentinian passport, she did not have a United States visa in that passport. Because of the lack of such visa a concern was raised that she would not be allowed re-entry back into the United States. The defendant spoke Spanish, thus necessitating the use of an interpreter. Such interpreter was Officer Gil Paredes of the United States Customs and Border Protection Service.

The defendant was then taken to a pre-clearance facility where Officer Paredes worked. In response to Officer Paredes's inquiry about documents for re-entry into the United States, the defendant advised him that she possessed a United States Permanent Resident Card. This card revealed that her place of birth was Cuba, contrary to her Argentinian passport revealing that she was born in Argentina.

Subsequently the defendant, following her statements to Officer Paredes, provided Officer Paredes with a written statement in which she admitted that she had purchased "Cuban papers by paying [for them]." The Cuban paper was a Cuban birth certificate. At that time she admitted that she was born in Argentina.

The defendant was then returned to Miami by plane and the captain of the plane brought the defendant's documents consisting of her Argentinian passport, her Permanent Resident card, and her Employment Authorization card. Upon her arrival in Miami the defendant was met by Special Agents Alan Vega and Trevor McKenzie of Immigration and Customs Enforcement (ICE), who had been previously advised that the defendant's Permanent Resident Card was obtained by her use of the purchased Cuban birth certificate.

Pursuant to the usual border search of her baggage the agents discovered photocopies of Cuban and Honduran birth certificates, which she denied were hers. In addition, $5,100.00 in cash was found. She advised the agents that she had been instructed to deliver the currency to a man named Carlos.

An examination of appropriate computer bases revealed that in 2005 the defendant had applied for a United States visa and in such application the defendant stated that she was born in Argentina. Based upon the foregoing facts the defendant was then placed under arrest and given her

*Miranda* rights. She advised the agents that she wanted and attorney and at that point no further questions were asked of the defendant.

## DISCUSSION

The defendant, in her Motion now before the Court, claims that she should have been given her *Miranda* rights in Nassau since she was then in custody. In support she cites *United States v. Moya*, 74 F.3d 1117, 1120 (11th Cir. 1996), which held *inter alia* that prior to custodial interrogation, that aliens at the border are entitled to *Miranda* warnings. Thus, it appears that the issue of custody is of paramount importance in the consideration of the defendant's Motion to Suppress.

In determining whether a person is in custody the Court should consider the "totality of the circumstances [whether] a reasonable [person] in the suspect's position would feel a restraint on his freedom of movement . . .to such extent that he would not feel free to leave." *Moya, id.*

As the government correctly points out, the government has a strong interest in controlling its borders and such fact should be persuasive in custody determinations. *United States v. Lueck*, 678 F.2d 895 (11th Cir. 1982). Accordingly, under such principles, border questioning must be accusatory in order for a reasonable person to feel a restraint on the option of roaming.

In determining the issue of custody, the Court should consider whether the officers restrained or moved the person during the interview, whether the person was handcuffed or whether the officers had their weapons drawn, whether the person had been booked or placed under arrest, and whether the person was denied the right to leave when she had requested to do so. *United States v. Padilla*, 2006 WL 3678567, *3 (S.D. Fla. Nov. 17, 2006). None of such factors of any significance were present in this cause.

Officer Paredes, acting at the request of the Bahamian authorities, was providing interpreting services for them. His inquiries of the defendant were triggered by the defendant's inability to provide the Bahamian officials with documents that would permit her re-entry into the United States. Paredes was also concerned with the defendant's ability to re-enter the United States and such inquiries yielded discrepancies as to her place of birth and residence. She ultimately volunteered that she had purchased Cuban papers used to obtain her visa. She then was refused admission into the Bahamas resulting in her return to the United States.

The Court finds that the defendant was not in custody while at the Customs and Border Protection facility in the Bahamas when she provided her written statement. She had not been placed under arrest, had not been handcuffed or restrained, and had not been booked by either American or Bahamian officials. In the absence of custody having been shown, there was no requirement that the defendant be *Mirandized* while at the Bahamian facility.

The defendant's reliance on the "joint venture doctrine" is misplaced since Officer Paredes was acting on instructions from the Bahamian officials to serve as an interpreter to merely determine whether the defendant could lawfully enter the Bahamas. Paredes was always accompanied by a Bahamian official whose efforts were directed to determine whether the defendant could enter the Bahamas. Such action did not implicate the "joint venture doctrine."

Further, Paredes's questions of the defendant were merely to assist in determining her eligibility for entry into the Bahamas. Such questions are consistent with those usually propounded to persons as part of the normal primary inspection at a port of entry. Such questions are not of a nature that require the rendition of *Miranda* warnings. *United States v. Moya*, 74 F.3d 1117 (11th

Cir. 1996). The Court further finds that any questions asked of the defendant by Officer Paredes were not accusatory in nature.

The Court finds that the testimony of the government witnesses was highly credible and unrebutted. Such testimony clearly fails to reveal facts that would justify the relief sought by the defendant in her Motion to Suppress Statements.

## CONCLUSION AND RECOMMENDATION

For reasons set forth above and based upon the Court's review of the record, and consideration of the submissions of the parties and documents and evidence presented at the hearing, the undersigned respectfully

RECOMMENDS that the defendant Pirez's Motion to Suppress Statements be DENIED.

The parties have ten (10) days from the date of this Report and Recommendation within which to file written objections, if any, with United States District Judge Joan A. Lenard. See 28 U.S.C. §636 (1991). Failure to file timely objections may bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745, 750 (11th Cir.), cert. denied, 488 U.S. 958 (1988).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this 26th day of September, 2008.

BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE

5